M.C., LTD., *et al.*, Plaintiffs-Appellees, *v.* ROMEO S. COLINA, M.D., Defendant-Appellant.

First District (4th Division)    No. 76-537

Opinion filed December 15, 1977.

Laser, Schostok, Kolman & Frank, of Chicago, for appellant.

Keith J. Kulie and Frank R. Wiemerslage, both of Park Ridge, for appellees.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The plaintiffs, M.C., Ltd. and Diosdado Momongan, M.D., sued the defendant, Romeo S. Colina, M.D. in the circuit court of Cook County. This appeal arises from the order entered by the trial court which denied the defendant's motion for leave to file his amended answer, countercomplaint, and third-party complaint.

The issue presented for review is whether it was error for the trial court to deny defendant's motion.

The record reveals the facts to be as follows. On July 24, 1974, M.C., Ltd. (hereafter referred to as Corporation or plaintiff), and Dr. Diosdado P. Momongan (hereafter referred to as plaintiff), filed separate complaints against Dr. Romeo S. Colina. Both physicians were shareholders in M.C., Ltd., simultaneously. M.C., Ltd. alleged in its complaint that on or about November 27, 1973, Momongan and Colina formed a registered medical corporation, M.C., Ltd., with each owning 50 percent of the outstanding shares. The Corporation was established to own, operate, and maintain an establishment for the study, diagnosis, and treatment of human diseases and injuries. Since November 27, 1973, Colina performed services as an employee of the Corporation which primarily involved the rendering of professional medical services to public aid recipients, and amounts for these services were generally billed to the State of Illinois, Department of Public Aid, in the names of both doctors. Both physicians performed such services as employees of the Corporation and their activities resulted in certain monies due and owing to the Corporation. The Corporation agreed to pay each physician a salary and bonuses, calculated on the basis of each receiving 50 percent of the net profits of the Corporation. According to the complaint, any monies received by the doctors individually from the State of Illinois, Department of Public Aid, represented payments to them as employees of the Corporation. Colina

never resigned his positions as employee, director, and officer of M.C., Ltd. The complaint alleged that since November 27, 1973, Dr. Colina failed to fully account for and pay to the Corporation all monies paid to him individually for services he performed as an employee and prayed that he be required to give a full accounting and pay to the Corporation any monies due and owing to it.

Dr. Momongan charged in his complaint that he and Dr. Colina entered into a verbal agreement, that Colina was to provide professional medical services and that he (Momongan) would establish staff and maintain the medical facility. Under their agreement, Colina would receive 65 percent and Momongan 35 percent of all funds collected from the State of Illinois, Department of Public Aid. According to the complaint, this agreement extended from August 1973 through the end of January 1974, and Dr. Colina repeatedly refused to account to and pay to the plaintiff the monies due him according to their agreement. The prayer was that he be required to do so. The defendant, in his answers, denied that the substance of the agreement between the parties was as set forth in plaintiffs' complaints. He denied that he had refused to account to the plaintiffs or that plaintiffs had requested him to do so, and denied that he had failed to pay plaintiffs any money properly owed to them. The defendant set forth in his answers additional and affirmative defenses. He alleged that it was on or about February 1, 1974, that the Corporation was formed, and that he effectively terminated his relationship with the Corporation on or about April 2, 1974. According to the defendant, Dr. Momongan failed to properly account to him and submit to him sums owed as a result of his interest in the Corporation. However, defendant also set forth that both physicians had turned over records to their mutual accountant and that a full accounting was had by all parties. Therefore, the defendant alleged that plaintiffs' claims were without foundation and merit, totally false, and made in bad faith. The defendant charged that he was entitled to damages for false and spurious pleading, and for reasonable costs and attorneys' fees.

On November 8, 1975, the separate actions were ordered consolidated by Judge Jiganti. On that date, the defendant, through his substituted attorneys, moved for leave to file his amended answer, counterclaim, and third-party complaint. The motion set forth that in defendant's original answers, filed through his prior attorney, the counterclaim had been erroneously misnomered as additional and affirmative defenses. The original answers were filed on August 16 and 20, 1974, and substantial discovery had been taken in the matter. Judge Jiganti granted defendant leave to file his third-party complaint and continued the motion to file the amended answer and counterclaim, giving the plaintiffs 14 days to reply to the motion.

Plaintiffs filed their memorandum in opposition to defendant's motion, alleging that they would be significantly prejudiced if defendant were allowed to change his theory so late in the case. Plaintiffs' memorandum pointed out that defendant's motion was filed 1 year and 2 months after the complaints and that plaintiffs had been caused to pursue certain courses of conduct in reliance on defendant's answers to the complaints and responses during discovery relating to the issues. The memorandum set forth in detail how each plaintiff would be prejudiced if defendant was granted leave to file his amended and additional pleadings. On February 9, 1976, Judge Coman denied defendant's motion and granted plaintiffs' motion to strike defendant's amended answer, counterclaim, and third-party complaint.

■■ The defendant contends that the trial court erred when it exercised its discretion and refused defendant leave to file his amended pleadings. In support of this contention, defendant cites section 46 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 46(1)) which provides in part as follows:

"(1) At any time before final judgment amendments may be allowed on just and reasonable terms * * * changing the cause of action or defense or adding new causes of action or defenses* * *."

According to defendant, the power to allow the amendment of pleadings granted by section 46 should be liberally construed in favor of permitting new pleadings essential to the presentation or preservation of a party's cause of action or defense. *Goshey v. Dunlap* (1973), 16 Ill. App. 3d 29, 305 N.E.2d 648.

Although we agree that the law is as defendant contends, we do not find that the law required the trial court to allow defendant's motion in the instant case.

■■ We note that the statutory section cited by defendant provides that "amendments *may* be allowed on just and reasonable terms* * *." (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 110, par. 46(1).) This court has held that the word "may" ordinarily connotes discretion. (*Parliament Insurance Co. v. Department of Revenue* (1977), 50 Ill. App. 3d 341, 346-47, 365 N.E.2d 667, 671.) The law is well established, and defendant recognizes, that the trial court may exercise its sound discretion to permit amendments on the pleadings prior to the entry of final judgment. (*Wheat v. Freeman Coal Mining Corp.* (1974), 23 Ill. App. 3d 14, 24, 319 N.E.2d 290, 299.) Furthermore, the trial court will exercise its sound discretion in determining whether or not to allow a proposed amendment. (*Banks v. United Insurance Co. of America* (1975), 28 Ill. App. 3d 60, 64, 328 N.E.2d 167, 170.) In *Banks*, the court stated in reference to the trial court's power to allow amendments as follows:

"Despite this extensive freedom, a party has no absolute right to amend his pleading. It is for the trial court to decide, in the first instance and in the exercise of sound discretion, whether to allow a proposed amendment. The appellate court will intervene only if, having a view of the peculiar facts and circumstances of a case and the impact upon all the parties of permitting or not permitting the motion, it determines that the initial ruling does not further the ends of justice." (*Banks*, at 64.)

In *Harris v. Algonquin Ready Mix, Inc.* (1973), 13 Ill. App. 3d 559, 562, 300 N.E.2d 824, 827, *aff'd*, 59 Ill. 2d 445, this court held that whether or not a party may be allowed to file an amended pleading is within the discretion of the trial judge and the determining factor for overruling a judge's disallowance of a motion to amend must be found in a clear abuse of his discretion, considering the facts and circumstances of the case and the impact upon all the parties.

■■ We do not find that the trial court clearly abused its discretion here, in view of the facts and circumstances of the instant case, and considering the impact upon the parties. A careful review of the record reveals that the trial court could reasonably have found that plaintiffs would be significantly prejudiced if defendant was allowed to file his amendments changing the theory of the case at so advanced a stage in the proceedings. Rather than merely correcting the accidentally misnomered affirmative and additional defenses of the original answers, the defendant sought in his amended pleadings to completely change the theory of the case, alleging in his amended answer that the relationship between himself and the plaintiffs was illegal and therefore unenforceable. We do not believe that defendant was unfairly prejudiced by the determination of the trial court. We note that the court's order reasonably provided that defendant's original answers and affirmative and additional defenses would stand, and granted defendant leave to file amended affirmative defenses as contained in his amended answer.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER, P. J., and ROMITI, J., concur.