LA GRANGE METAL PRODUCTS, Plaintiff-Appellee and Cross-Appellant, v. PETTIBONE MULLIKEN CORPORATION, Defendant-Appellant and Cross-Appellee.

First District (4th Division)    No. 81-415

Opinion filed May 20, 1982.

Robert H. Joyce and Hyman K. Bielsky, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

William J. Harte, of Chicago (William T. Rodeghier, of counsel), for appellee.

PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Pettibone Mulliken Corporation (Pettibone), appeals a judgment in a contract action granting damages in the total amount of $130,522.12 to plaintiff, La Grange Metal Products (La Grange), on counts I, III and IV and the award of prejudgment interest to plaintiff on counts I and III. Plaintiff appeals the judgment for defendant on counts II and V and the denial of prejudgment interest on count IV. The following issues are raised for review: (1) whether the trial court abused its discretion in refusing to allow defendant to amend its answer; (2) whether the trial court erred in holding that the quotation letters were offers; (3) whether the judgment for plaintiff on counts I, III and IV is against the manifest weight of the evidence; (4) whether the trial court erred in entering judgment for defendant on counts II and V; (5) whether the evidence presented by plaintiff proved an account stated; and (6) whether the trial court properly awarded prejudgment interest.

We affirm.

La Grange is an Illinois corporation engaged in the business of producing and manufacturing metal products, including metal beams and castings. Pettibone is a foreign corporation doing business in Illinois. Plaintiff filed a complaint against defendant alleging as follows:

Count I. In a letter dated May 2, 1966, plaintiff quoted part number A-3543 beam at $295 for 100 to 200 pieces, and $108 for 200 to 300 pieces. In a purchase order dated May 12, 1966, defendant ordered 200 pieces. Its purchase order listed the unit price as $108. Plaintiff processed 150 pieces.

Count II. In a letter dated November 3, 1966, plaintiff quoted part number A-3542 beam at $380 for 100 to 200 pieces, and $135 for 200 to 300 pieces. In a purchase order dated November 15, 1966, defendant ordered 240 pieces. Defendant's purchase order listed the unit price as $135. A line was drawn through the $135 and $115 was written underneath with the date May 9, 1967. Plaintiff processed 111 pieces.

Count III. In a letter dated May 2, 1966, plaintiff quoted part number AA-45255 castings at $904 for 51 to 100 pieces, $436 for 100 to 200 pieces, and $195 for 200 to 300 pieces. In a purchase order dated May 12, 1966, plaintiff ordered 200 pieces. Its order listed $195.50 as a tentative unit price. Plaintiff processed 62 pieces.

Count IV. In a letter dated May 2, 1966, plaintiff quoted part number A-3269 cover castings at $1,580 for 10 to 25 pieces. Defendant's original purchase order was dated May 12, 1966, and 212 castings were ordered. The figure 182 was crossed out and the

unit price of $239 was written under it. In a corrected order dated September 21, 1966, defendant reduced the quantity to 15. Plaintiff processed 17 items.

Count V. In a letter dated February 17, 1967, plaintiff quoted part number A-3543 beam at $1,496 for 10 to 25 pieces, and $185 for 200 to 300 pieces. In a purchase order dated February 9, 1967, defendant ordered 240 pieces. Typed under "unit price" was "advise price." Written underneath this was $185 ea., H.F.G. told A.G. $135." Plaintiff processed 25 items.

In all counts, plaintiff alleged that defendant had failed to pay the amounts owing and prayed for damages plus interest.

In its answer, defendant admitted that plaintiff quoted certain prices but denied that the prices quoted were as alleged. Pettibone also admitted shipping certain items to La Grange but denied that the items were subject to the prices alleged. Defendant further alleged that it paid certain sums in full payment.

Testimony at trial established the following.

Frank Greene, president of La Grange, testified that in April 1966 he visited with officers of Pettibone, Mr. Cavender and Mr. Slokum. They knew that Greene had farmed out work to Madden Machine Company and they wanted him to secure parts machined for them by Madden. During this conversation, Greene called David Madden.

Three or four days after this meeting, Greene sent price quotations to Pettibone. At trial, Greene explained that the more parts machined, the less the price per part. Greene never received any objections to the price quotations. When asked about count II, Greene said that the $115 written underneath the unit price looked like his writing, but he was not positive that it was his handwriting. Greene also testified that during their relationship, Pettibone requested either more or less machining and that the unit price was either increased or reduced.

David Madden testified that he sent price quotations to La Grange on May 2, 1966. He performed the work for Pettibone through La Grange. After the castings were machined but before they were shipped, they were checked by an inspector from Pettibone. Madden never received any complaints about the timeliness of delivery and never received any complaints about or rejections of the castings. In his opinion, the castings were machined properly. Madden rejected castings delivered to him for machining in a defective condition. On cross-examination, Madden said that Pettibone did not pick up castings which were not machined or not completely machined.

Thomas M. Cavender, a vice-president of Pettibone, did not recall receiving price quotations from Greene and did not recall what unit prices

were discussed. He said that he had no discussion with Greene about pricing on a graduated basis. The discussion was to establish only one price on machining the castings.

Cavender said the parts furnished under count I were poor in quality and had to be returned. Plaintiff noted that there was no affirmative defense of nonperformance or failure to perform the contract. The trial court held that the only bone of contention was the rate to be charged and that plaintiff had proved an account stated. The defense made an offer to prove that plaintiff did not perform the contract, which the court denied on the grounds of surprise. The court also denied defendant's motion to amend its pleadings to state that the parts were not machined properly.

With regard to count III, Cavender testified that the pieces were not machined properly; that as a consequence, Greene and Pettibone agreed to cut the price in half. Defendant introduced into evidence invoices purporting to show that Greene had accepted one-half of the total. They were signed "Frank Green." Greene denied that the signatures were his.

Ronald P. McGovern, a certified public accountant, was controller for Pettibone from 1967 to 1976. He testified that he told Harvey Bass of La Grange in February 1970 that Pettibone owed no money to La Grange.

Wanda Larson testified for defendant. She had been employed by Greene from about 1968 or 1969 through 1970. In late 1968 or early 1969, she was asked to assemble documents of Pettibone that were in Greene's files. Larson organized and copied the files which consisted of invoices from the Madden company which had been sent to Pettibone. Subsequently, Larson saw Greene's wife prepare documents quoting prices for transactions between La Grange and Pettibone. Larson identified quotation letters dated May 2, 1966, November 3, 1966, and February 17, 1967, as having been typed by Greene's wife in 1969. Larson admitted that when she left employment with Greene, he had accused her of stealing and telling lies to suppliers and customers.

At the end of this bench trial, the court found that Larson's testimony was incredible because she demonstrated by her appearance on the stand an intense hatred for plaintiff. The court found that the quotation letters from Greene were the only credible evidence. It accepted Greene's contention that he did not sign the invoices purporting to compromise the price for parts included under count III. The court found for plaintiff on counts I, III and IV and awarded interest on counts I and III. The court found for defendant on counts II and V because there was a material change in the amount of work done and the court refused to guess at damages. Defendant appeals the judgment for plaintiff on counts I, III and IV and the award of prejudgment interest. Plaintiff appeals the judgment for defendant on counts II and V and the denial of prejudgment interest on count IV.

The first issue raised by this appeal is whether the trial court abused its discretion in refusing to allow defendant to amend its answer. In its complaint, plaintiff alleged that it processed a certain number of pieces and that defendant failed to pay the amounts owing. Defendant's answer admitted that plaintiff shipped the items but denied that they were subject to the prices alleged. At trial, when defendant attempted to defend on the grounds of nonperformance, the trial court stated: "I see no issues raised in the pleadings as to nonperformance * * *." The court refused to allow defendant to amend its answer to deny that the pieces were machined properly.

The power to allow amendments should be freely used so that a party may fully present his case. Despite this extensive freedom, a party has no absolute right to amend his pleading. It is for the trial court to decide in the exercise of its sound discretion whether to allow a proposed amendment. (*Banks v. United Insurance Co. of America* (1975), 28 Ill. App. 3d 60, 64, 328 N.E.2d 167, 170.) The determining factor for overruling a judge's disallowance of a motion to amend must be found in a clear abuse of his discretion, considering the facts and circumstances of the case and the impact upon all the parties. *M.C., Ltd. v. Colina* (1977), 55 Ill. App. 3d 730, 734, 371 N.E.2d 145, 148.

■■ We do not find that the trial court clearly abused its discretion in view of the facts and circumstances of the instant case. The cause of action arose in 1966, but the parties did not go to trial until 1980. Defendant sought to change the theory of the case from a dispute over contract price to nonperformance during the second day of trial on December 24, 1980. We note that the trial court did permit testimony by defense witness Cavender on the issue of plaintiff's performance. With respect to count III, Cavender testified:

> "And La Grange Metal Products and Madden Machine never could machine one piece properly. And we never received one piece on our purchase order of this particular part that was machined in accordance with the drawing."

When asked about machining of parts under the other counts, the witness stated:

> "CAVENDER: We had the same problems on the other parts, but not to the same degree that we did on this.
>
> MR. JOYCE [attorney for defendant]: And were those agreements terminated or canceled, whatever, also?
>
> CAVENDER: In the same fashion. Mr. Greene or Mr. Madden could not furnish the parts that we required to our prints and when we needed them. So we decided to cancel the order, terminate it, whatever the terminology is. And we picked up the tooling and the

parts that were at Madden Machine and we finished them ourselves."

The trier of fact heard evidence of nonperformance and rejected it. We do not believe that defendant was unfairly prejudiced by the determination of the trial court.

■■ The next issue raised by this appeal is whether the trial court erred in holding that the quotation letters were offers. Defendant Pettibone cites *Interstate Industries, Inc. v. Barclay Industries, Inc.* (7th Cir. 1976), 540 F.2d 868, for the proposition that the quotation letters cannot be considered offers as a matter of law. Defendant misconstrues the law in that case. Whether a communication naming a price is a quotation or an offer depends upon the intention of the owner as it is manifested by the facts and circumstances of each particular case. (*Interstate Industries, Inc. v. Barclay Industries, Inc.* (7th Cir. 1976), 540 F.2d 868, 871.) Therefore, whether the letters were offers or invitations to deal was a question for the trier of fact to decide.

■■ A court of review will not reverse the findings of a trial judge, sitting without a jury, who has seen and heard the witnesses, unless it is clear that such findings are palpably contrary to the evidence. (*Quist v. Streicher* (1960), 18 Ill. 2d 376, 380, 164 N.E.2d 44, 46.) Even if the reviewing court disagrees with the trial court, or might have come to a different conclusion, the decision of the trial court will not be reversed if there is evidence to support it. (*Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 102, 163 N.E.2d 518, 523.) The trial court heard evidence from plaintiff's witness Greene in support of the contention that the quotation letters were offers. Therefore, we hold that the trial court did not err in holding that the quotation letters were offers.

The next issues to be considered are whether the trial court's judgments for plaintiff on counts I, III and IV and for defendant on counts II and V were proper.

Citing no authority, defendant argues that the judgment for plaintiff on counts I, III and IV is against the manifest weight of the evidence because the amounts underlying all the counts were changed after the quotation letters were mailed and because prices were frequently changed upon mutual agreement of the parties. Defendant's argument is without merit. Defendant ignores the fact that the trial court found incredible Wanda Larson's testimony regarding the quotation letters and that it also found no material alterations in the contracts underlying counts I, III and IV. Therefore, we hold that the trial court properly entered judgment in favor of plaintiff on counts I, III and IV.

■■ Plaintiff cross-appealed on the theory that the trial court erred in entering judgment in defendant's favor on counts II and V. The trial court found a material change in the quantity of work to be done on the con-

tracts underlying counts II and V and refused to speculate that a higher unit price would be charged for less work. In the trial court's opinion, plaintiff failed to prove the amount of damages on those counts. A party seeking damages must supply a reasonable basis for computation of those damages. (*Ashe v. Sunshine Broadcasting Corp.* (1980), 90 Ill. App. 3d 97, 101, 412 N.E.2d 1142, 1145.) Damages may not be predicated on mere speculation. (*De Koven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 802, 327 N.E.2d 378, 380.) We note that plaintiff alleged in its exhibit 9 that it received certain amounts in partial payment of each of the five contracts. We hold, therefore, that the trial court properly entered judgment for defendant on counts II and V because plaintiff failed to prove the additional amounts owing for those counts.

The next issue raised by defendant Pettibone is whether the trial court erred in holding that plaintiff proved an account stated. Defendant overlooks the facts of the instant case. The trial judge did not find for plaintiff on the basis of an account stated; rather, he viewed plaintiff's cause of action as in the nature of an account stated, saying, "I view this case as you might call it, I've called it accounts stated. Perhaps I'm incorrect as calling it accounts stated. It certainly was an agreement for specific work to be done at specific prices * * *."

■■ An account stated is an agreement between parties who have had previous transactions of a monetary character that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied for the payment of such balance. (*Motive Parts Co. of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 938, 369 N.E.2d 119, 122.) The meeting of the parties' minds upon the correctness of an account is usually the result of one party rendering a statement of account and the other party acquiescing thereto. (*Motive Parts Co. of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 938.) The form of acquiescence is immaterial, and the meeting of minds may be inferred from the conduct of the parties and the circumstances of the case. Where a statement of account is rendered by one party to another and is retained by the latter beyond a reasonable time without objection, the retention of the statement of account without objection within a reasonable time constitutes an acknowledgment and recognition by the latter of the correctness of the account and establishes an account stated. *Motive Parts Co. of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 939.

■■ Assuming arguendo that the above-quoted statement constituted a finding, the existence of an account stated is a fact question. (*Motive Parts Co. of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 940.) Since a bench trial was conducted, the issue was properly resolved by the court sitting as the finder of fact. (*Motive Parts Co. of America, Inc. v.*

*Robinson* (1977), 53 Ill. App. 3d 935, 940.) We are not prepared to hold that this finding is against the manifest weight of the evidence.

In support of its position, defendant further argues that in finding the existence of an account stated, the trial court improperly relied on plaintiff's exhibits 8 and 9, which consisted of a transmittal letter from plaintiff's attorney dated February 9, 1970, and a table summarizing the amounts owed plaintiff on the contracts. But, the trial court admitted these exhibits only for the limited purpose of aiding it in the computation of plaintiff's damages. We find, therefore, that the trial court did not improperly rely on plaintiff's exhibits 8 and 9.

The final issue raised by this appeal is whether the trial court properly awarded prejudgment interest. In its order, the trial court awarded interest from June 1, 1971, on counts I and III but not on count IV. Section 2 of "An Act in relation to the rate of interest and other charges in connection with sales on credit and the lending of money" (Ill. Rev. Stat. 1979, ch. 74, par. 2) provides in pertinent part:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any * * * instrument of writing; * * * on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; * * * and on money withheld by an unreasonable and vexatious delay of payment."

A written contract for the sale of goods is a " 'written instrument' " within the meaning of the statute. (*Servbest Foods, Inc. v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 677, 403 N.E.2d 1, 13.) The written contract must include some provisions concerning price so that the amount due under the contract will be fixed or determinable. The amount must be due in the sense that a debtor-creditor relationship has come into being in order to warrant prejudgment interest. Prejudgment interest will be granted although a good faith defense exists and even where the claimed right and the amount due require legal ascertainment. (*Servbest Foods, Inc. v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 677.) In the present case, the amount due was capable of easy and exact computation once the court determined that the quotation letters and purchase orders constituted offer and acceptance. The court found that there was no material alteration in the contracts underlying counts I, III and IV and that the prices listed in the quotation letters were the contract prices.

We note that this case involved five contracts which were entered into by the parties in 1966 and 1967. The unit price for machining varied according to the number of parts to be machined. The case was not tried until December 1980. The determination of this case depends largely upon the facts in the record. In such situations, the finding and judgment

of the trial court in nonjury cases will not be disturbed by the reviewing court, if there is any evidence in the record to support such findings. (*Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 102, 163 N.E.2d 518, 523.) Where the trial court has seen and heard the witnesses and the testimony is contradictory, this court will not substitute its judgment as to the credibility of witnesses for that of the trial court, and we will not disturb the findings unless they are manifestly against the weight of the evidence. *Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 102.

After a careful examination of the record here, we are satisfied the judgment is amply supported by the evidence and substantially free of error. We, therefore, affirm the judgment.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and ROMITI, JJ., concur.