**RESIDENTIAL MARKETING GROUP, INC., Plaintiff–Appellee,**

v.

**GRANITE INVESTMENT GROUP and James C. Green, Defendants–Appellants.**

No. 90–2476.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1991.

Decided May 28, 1991.

Rehearing Denied July 10, 1991.

Mark Sableman, Thompson & Mitchell, St. Louis, Mo., for plaintiff-appellee.

Rex Carr and Charlene N. Kass, Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, East St. Louis, Ill., for defendants-appellants.

Before POSNER, FLAUM and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

This is a suit for breach of contract, in federal court by virtue of the diversity jurisdiction. It is agreed that Illinois law governs the substantive issues. A jury awarded the plaintiff, Residential Marketing Group, $272,000 in damages and the judge added $93,000 in prejudgment interest, for a grand total of $365,000 (we round off all dollar figures to the nearest $1,000). The defendants—Granite Investment Company, a limited partnership that owns apartment buildings and other real estate in the Illinois suburbs of St. Louis, and its general partner, James Green—appeal.

Granite's apartment buildings had been taken over by the Federal Savings and Loan Insurance Corporation, which held a mortgage of more than $15 million on the buildings. In 1981 FSLIC agreed to return the buildings to Granite's control, provided that Granite hired a firm that would "manage, operate and rent" the buildings and make sure the rents (minus operating expenses) were paid over to FSLIC to be applied against the mortgage debt. Granite hired Residential at "a base monthly fee of $4,000 plus a percentage fee of 1½% of gross income from all sources (rents, interest, commissions, sale of properties, etc.)." Residential carried out its managerial duties uneventfully; it also investigated the possibility of converting the buildings to condominiums, which could then be sold, but nothing came of this. The following year, with the management contract still in force, Green negotiated a sale of the apartment buildings to Security Pacific, Inc., a real estate investment syndicate. Residential was not involved in the negotiation. As payment for the buildings, Security Pacific gave Granite a $17.7 million non-recourse wrap-around promissory note payable in installments over the term of FSLIC's mortgage. The non-recourse feature meant that if Security Pacific defaulted, Granite could retake the buildings but could not sue Security Pacific itself. The wrap-around feature meant that Security Pacific would make payments on FSLIC's mortgage directly to FSLIC. Most of the note would go to pay the mortgage but, if it was paid in full, Granite would net $1.7 million, spread over the life of the note.

Residential claims that the full $17.7 million face amount of the promissory note is "gross income from ... sale of properties" within the meaning of its contract (which incidentally it drafted) with Granite. Granite claims that the debt to FSLIC must be deducted to calculate gross income. It argues with considerable force that Residential's interpretation requires Granite to pay out $272,000 on a transaction in which Residential rendered no services and which will yield only $1.7 million to Granite and then only over a period of many years and—given the non-recourse character of the note—with an ever-present risk of default.

■ The contract does not define the term "gross income," and, Granite to the contrary notwithstanding, the term cannot be assumed to bear the same meaning that it does in the Internal Revenue Code. If it did, moreover, the proper amount to subtract from the sales price to compute gross income would not be the mortgage debt, but Granite's basis, which would be its original cost minus depreciation. Suppose Granite paid $100,000 for a building that appreciated rapidly, took $50,000 in depreciation deductions, and later mortgaged the property for $1 million and then sold it for $2 million. For purposes of federal income tax the gross income from the sale would be $1,950,000, not $1 million. So the incorporation of the Internal Revenue Code into the contract would not get Granite to where it wants to be. At oral argument—too late—Granite changed its position and argued that "gross income" in the contract means the sales price minus Granite's cost; but it had neglected to place its cost in the

record; and anyway cost is not the same as basis. At trial, moreover, Granite had argued that the number from which its debt ought to be subtracted was not $17.7 million, or original cost, or basis, but $0, because a promissory note is not cash.

Granite's equivocations are amusing; its underlying contention that when a term appears in both the Internal Revenue Code and a contract it must be assumed to bear the same meaning is unsound. Such an assumption would be unrealistic in many though not in all cases. Suppose the term were "adjusted gross income." That is a term whose use is pretty much confined to tax law, so if parties use it the chances are good that they meant it to bear its tax meaning. The chances are so good that Illinois courts would not allow the admission of oral evidence on the question. They would say the contract was clear "on its face." *Dribeck Importers, Inc. v. G. Heileman Brewing Co.*, 883 F.2d 569, 573 (7th Cir.1989), and cases cited there. There is an eternal tug of war between giving the parties to a contract a right to testify to what they in fact meant by the words in the contract and preventing one party from depriving the other of the protection of the written contract by testifying contrary to its apparent meaning. Desire for certainty and predictability, perhaps combined with some distrust of juries, has resulted in a presumption that the judge will try to puzzle out the meaning of the contract without recourse to inevitably self-serving, often protracted, and typically inconclusive oral testimony. But the presumption fails in a case like this where it just is extremely unclear what the parties meant when they used a key term. At this point the contract is pronounced ambiguous and the judge is entitled to admit oral evidence to disambiguate it. *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 365–66 (7th Cir. 1990); *Dribeck Importers, Inc. v. G. Heileman Brewing Co., supra*, 883 F.2d at 573; *Stamatakis Industries, Inc. v. King*, 165 Ill.App.3d 879, 887, 117 Ill.Dec. 419, 424, 520 N.E.2d 770, 775 (1987).

Residential's boss testified that he had employed the term "gross income" in an effort to be as inclusive as possible, and apparently the jury believed him. Why should it not have? When a sales commission or other fee is calculated on a net rather than a gross basis (and remember that Granite is arguing that gross income is net of debt—or cost, or basis, or something), the obliger is invited to engage in creative accounting and financial legerdemain. After all, if Granite is right, in one of its principal submissions, that "gross income" means sales price minus debt, all it had to do was to borrow another $1.7 million against the buildings and then it would have owed Residential nothing.

Nor can we be sure that Residential did not earn its fee, generous as that fee appears in retrospect to be. Granite was on the ropes when it hired Residential. FSLIC, which had been litigating with Granite for almost a decade, insisted as a condition of returning the buildings to Granite's control that Granite hire a reputable watchdog. Residential fit the bill. Naturally it wanted to be compensated, and with a generous upside potential. And as Granite and its principal, Green, had a well-deserved reputation for litigiousness and the buildings were in trouble, naturally Residential wanted its fee computed on as simple, inclusive, and nondiscretionary a basis as possible. As for Granite's suggestion that the promissory note, because of its non-recourse and wrap-around features, was of illusory value—as if Security Pacific had paid for the buildings in Confederate dollars—it was of course free to try to prove this if it could, but it took the wrong tack by arguing that the note was illusory because so much was owed to FSLIC. A receipt is not illusory just because the recipient has debts. This would be plain if payment had gone from Security Pacific to Granite and then to FSLIC, rather than skipping the intermediate step. As that would have been a distinction without a difference, the jury was not required to conclude that the omission of the step affected Residential's entitlement.

■ Granite could have presented evidence that the non-recourse and wraparound features of the promissory note reduced its market value. Such evidence

would have been relevant because, it could be strongly argued, gross income not received in cash would have to be given a cash value before it could be used to compute Residential's fee. That would be the realistic version of our Confederate dollars hypothetical. Granite didn't follow this course. It took the extreme, indeed absurd, position that the note was worthless because it was not cash. The wonder is not that the jury rejected so implausible a position but that it was permitted to consider it. Residential drafted the contract, but the venerable principle of interpretation that ambiguities in written contracts are to be resolved against the draftsman does not bar the use of oral testimony to disambiguate a written contract. *Howard A. Koop & Associates v. KPK Corp.*, 119 Ill.App.3d 391, 398, 75 Ill.Dec. 276, 282, 457 N.E.2d 66, 72 (1983). It is a tie-breaker, used to resolve cases in which the written contract remains ambiguous even after oral evidence has been admitted. *Harbor Ins. Co. v. Continental Bank Corp., supra*, 922 F.2d at 366.

■ All this is to say not that the jury was correct to rule in favor of Residential, but only that its decision was not irrational, and therefore binds us—provided there were no trial errors. There were none. Judge Baker's decision to exclude Granite's income tax returns—tendered by Granite's counsel in pursuit of his untenable submission that gross income *must* mean the same thing in a contract that it does in the Internal Revenue Code—and his other trial rulings were well within his discretion as the trial judge, and his instructions to the jury were clear and correct.

The final issue is whether the judge was correct to tack on an award of prejudgment interest. Illinois law provides for such an award "for all moneys after they become due on any ... instrument of writing," Ill.Rev.Stat. ch. 17, ¶ 6402, and Granite concedes that its written contract with Residential was an instrument of writing within the meaning of the statute. It argues, however, that Residential's claim was not liquidated. And in fact when Residential first filed this suit, it asked for more than $1 million, almost four times what the jury awarded it.

■ The statute does not require that the instrument of writing specify the exact amount due the creditor. It is enough if it contains a formula from which that amount can be computed with reasonable accuracy. *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1157 (7th Cir.1989). "[E]asy and exact computation" is the favored catch phrase. *Michigan Avenue National Bank v. Evans, Inc.*, 176 Ill.App.3d 1047, 1061, 126 Ill.Dec. 245, 254, 531 N.E.2d 872, 881 (1988); *Servbest Foods, Inc. v. Emesee Industries, Inc.*, 82 Ill.App.3d 662, 677, 37 Ill.Dec. 945, 957, 403 N.E.2d 1, 13 (1980); *La Grange Metal Products v. Pettibone Mulliken Corp.*, 106 Ill.App.3d 1046, 1054, 62 Ill.Dec. 619, 626, 436 N.E.2d 645, 652 (1982). For then the debtor, if he desires to escape having to pay prejudgment interest (an unlikely desire, with a statutory rate of interest of only five precent), can, in advance of any trial or other factfinding procedure, deposit with the court the exact amount that he will have to pay if he is found to be liable. Granite could have done this. *Empire Gas Corp. v. American Bakeries Co.*, 840 F.2d 1333, 1342 (7th Cir.1988). The formula in its contract with Residential required information about the precise terms of Granite's deal with Security Pacific, and that information was in the possession of Granite, not Residential—which was why Residential made its extravagant claim at first. When it discovered the actual terms it scaled down its request, and it was the scaled-down amount that the jury awarded. Granite, armed with evidence that Residential could obtain only with the aid of pretrial discovery, could have computed the amount due under the contract, if Residential's interpretation prevailed, from the first.

■ Prejudgment interest is necessary to compensate the victim of a breach of contract or other wrong. In cases governed by federal law it is presumptively available. *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir.1989). As pointed out in *Zayre* and *Empire Gas*, there is no reason why the

Illinois statute should be given a grudging interpretation, and the Illinois courts do not give it a grudging interpretation. If the amount due under a written contract is determinable, so that the defendant can have a good (here a perfect) idea of the amount of prejudgment interest to which he may be liable if he does not resolve the case promptly, the plaintiff is entitled to such interest.

AFFIRMED.