In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-1651 and 01-1771

CAMPANIA MANAGEMENT COMPANY,
Incorporated,

Plaintiff-Appellant,

v.

ROOKS, PITTS & POUST, a law firm,
and Frank Rowland,

Defendants-Appellees.

ROOKS, PITTS & POUST, a law firm,

Plaintiff-Appellee,

v.

CAMPANIA MANAGEMENT COMPANY,
Incorporated,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 00 C 4397 & 00 C 4577--Suzanne B. Conlon, Judge.

Argued January 23, 2002--Decided May 14, 2002


   Before BAUER, COFFEY and EVANS, Circuit
Judges.

   COFFEY, Circuit Judge.  A third-party
claims administrator, Campania Management
Company ("Campania"), hired the law firm
of Rooks, Pitts & Poust ("Rooks") to
defend Metropolitan Rehabilitation
Services, Inc. ("MRSI") in a products
liability case filed against MRSI in the
Circuit Court of Cook County, Ill. In
spite of the fact that Rooks settled the
case, Campania refused to pay Rooks, and
this breach of contract suit followed.
The district judge held a one-day bench
trial and found that Rooks was entitled
to recover attorney's fees and expenses
totaling $101,300. The judge also awarded
prejudgment interest of $8,700. Campania
appeals, arguing that the district court
abused its discretion by refusing to
continue the case and by denying
Campania's motions to file an amended

counterclaim and an amended answer several weeks before trial. Campania also argues that the court's rulings on the breach of contract and interest claims were against the manifest weight of the evidence. We affirm.

I.  FACTUAL BACKGROUND

A.  Campania's Voluntary Dismissal and Proposed Amended Answer

   Campania retained the Rooks law firm in October 1994, after Scott Mann, a person with disabilities, sued MRSI and a co-defendant, alleging that they were responsible for supplying him with a defective wheelchair that collapsed and caused him to fall to the ground and fracture his right arm. MRSI was insured by Credit General Insurance ("CGI"), a large insurance corporation. CGI hired Campania to retain counsel and manage the defense of any claims brought against CGI's insureds. Campania selected the Rooks law firm to represent MRSI and agreed to pay Rooks's attorneys and paralegals hourly rates of $160 and $65, respectively. The contract further required that Rooks submit monthly invoices to Campania and, in turn, be reimbursed every sixty days for all of its reasonable fees and expenses.

   The lawsuit against MRSI progressed in Illinois state court and eventually settled in September 1999 after Mann backed down from his original demand for $6.1 million and dismissed his claim in exchange for $475,000 payable over seven years. Rooks thereafter presented Campania with a final invoice for $101,143 in fees and expenses. Campania refused to pay, asserting that Rooks had breached the contract by failing to submit monthly invoices to Campania between July 1998 and September 1999. Campania also maintained that Rooks had performed legal services that were substandard because Rooks was unable to convince the state trial judge to allow MRSI to bring a counterclaim for indemnity against the co-defendant, thus barring the possibility of any recovery of settlement costs from the co-defendant.

   In response to Campania's actions, Rooks sued Campania in state court for breach of contract. Campania, in turn, filed a

separate legal malpractice claim against Rooks. Both of these cases were removed to federal court, consolidated, and assigned to U.S. District Judge Suzanne B. Conlon, who entered a Uniform Scheduling Order immediately after the assignment of the case in August 2000. Three months later, upon a joint motion of the parties, Judge Conlon issued an amended scheduling order establishing January 22, 2001 as the deadline for completing all discovery and filing any dispositive motions. The order explicitly stated that "NO FURTHER EXTENSIONS" would be granted and that trial would commence during the March 2001 civil term.

This case moved forward uneventfully until January 16, 2001, when Campania filed two separate motions a mere six days before the date for the close of discovery. In its first motion, Campania asked the district court to dismiss its counterclaim for monetary damages caused by Rooks's alleged legal malpractice. In the second motion, Campania asked the district court for leave to amend its answer in order to: (1) deny retaining Rooks and argue that CGI--not Campania-- had hired Rooks to represent MRSI in the underlying state court suit; and (2) raise an affirmative defense that, in any event, Campania was not liable for damages because Rooks breached the contract by committing legal malpractice.

Campania's amended answer reflected a complete reversal in trial strategy, for Campania had previously admitted that it was the party that hired and agreed to reimburse Rooks for the costs of defending MRSI. Campania's about-face was prompted by the fact that CGI had allegedly filed for bankruptcy in the State of Ohio on some date unspecified prior to January 16, 2001. The practical effect of CGI's bankruptcy was that Campania could no longer anticipate reimbursement from CGI if the district court entered a judgment in Rooks's favor. Thus, by moving to amend its pleadings, Campania was attempting to change its trial strategy and argue that it was acting merely as an agent for CGI and, thus, had no legal obligation to pay Rooks's fees and expenses.

Naturally, Rooks opposed the motion to amend, arguing that it would be prejudiced by Campania's newly minted

theory of defense because the discovery deadline was set to expire in six days and, thus, Rooks would have no opportunity to depose any witnesses who might have knowledge about CGI's business relationship with Campania. After considering the parties' respective arguments, the trial court entered a minute order stating that Campania "fails to show good cause for its delay in asserting new theories of liability, while Plaintiffs demonstrate prejudice." The court granted Campania's motion to dismiss its legal malpractice claim but denied Campania's motion to amend its answer on file.

B.  Campania's Proposed Counterclaim and Motion to Amend, Extend and Continue

  In the meantime, Mann commenced a new lawsuit against Campania in the Circuit Court of Cook County. This suit was filed January 25, 2001 and alleged that Campania failed to make more than the first two installment payments required in exchange for Mann's dismissal of the case.

  On January 31, 2001, a full nine days after the expiration of the discovery date, Campania sought leave in federal court to file a counterclaim that repackaged and resurrected its earlier allegations against Rooks. That is to say, Campania alleged that it was liable for the damages caused by MRSI's tortious conduct only because Rooks had negligently named Campania--rather than CGI--as a party to the settlement agreement. Campania further requested the district court to reopen discovery and stay the federal case pending the outcome of the state court lawsuit, which ostensibly would determine the exact extent of Campania's liability to Mann. The court denied the motion and barred Campania from introducing any evidence at trial in support of its new theory of defense that CGI--and not Campania--was a party to Rooks's contract to perform legal services for MRSI.

  The parties waived their right to a jury trial and went to trial before the bench March 19, 2001. After considering the testimony, documentary evidence, and applicable case law, the trial judge concluded that Campania--not CGI--was the party that hired the Rooks law firm to

defend MRSI. The court determined that Rooks was acting within the scope of its authority when settling the case and that the settlement was fair and reasonable. The judge also ruled that Rooks billed Campania at a reasonable rate. In addition, the court credited the testimony of Frank Rowland, a partner at Rooks, who stated that as part of his normal course of business he regularly mailed invoices to Campania during the entirety of the representation between October 1994 and September 1999. Relying mainly on Rowland's testimony, the trial judge thus found: (1) that Rooks had substantially complied with the contract's monthly billing procedures; and (2) that any extent to which Rooks failed to do so consisted of only an immaterial breach of contract that failed to absolve Campania of its duty to pay Rooks for services rendered. Thus, the court ruled in favor of Rooks on its breach of contract claim and awarded $101,143 in compensatory damages plus $8,740 in statutory prejudgment interest.

## II.  DISCUSSION

Campania argues that the trial court committed reversible error in four separate respects: (1) refusing to allow Campania to amend its answer; (2) refusing to allow Campania to amend its complaint or introduce evidence that Rooks committed malpractice by including Campania as a party in the settlement of the underlying state court lawsuit; (3) finding as a fact that Campania breached the contract with Rooks; and (4) awarding Rooks prejudgment interest. We have determined Campania's arguments to be without merit. We fail to perceive any abuse of discretion with the judge's pre-trial rulings, and we conclude that the judge's factual findings and damages awards were supported by the evidence presented at trial.

### A.  Pre-Trial Motion Practice

### 1.  Motion to amend answer

Initially, we consider whether the district judge erred when denying Campania's motion to file an amended answer, which: (1) disavowed the earlier admission that Campania hired Rooks to represent MRSI and sought to assert that CGI hired Rooks instead; and (2) raised

what Campania called the "affirmative defense" that it was not liable for breach of contract because Rooks had allegedly committed legal malpractice. Campania claims that it could not have amended its answer earlier in the litigation because: (1) it had no previous knowledge that CGI filed for bankruptcy; and (2) the malpractice claim did not accrue until January 25, 2001, when Mann sued Campania for breaching the settlement agreement. Campania also asserts that Rooks would have suffered no prejudice from the amendment because "Rooks knew all along that there was an agency relationship between CGI and Campania" and that Campania was unsatisfied with the quality of Rooks's legal services. (Br. at 10.)

We review a court's denial of a motion to amend an answer for an abuse of discretion, Justice v. Town of Blackwell, 820 F.2d 238, 240-41 (7th Cir. 1987), and will reverse "only if the district court has abused that discretion by not providing a justifying reason for its decision." Perrian v. O'Grady, 958 F.2d 192, 194 (7th Cir. 1992). In this case, we hold that the denial of Campania's motion to amend was proper because Campania failed to act with diligence and the proposed amendment would have injected a new issue into the case on the eve of trial. In addition, we conclude that Campania's so-called "affirmative defense" was not a cognizable affirmative defense at all; it was merely a rendition of the facts Campania intended to argue at trial.

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleadings after a responsive pleading has been served "only by leave of the court or by written consent of the adverse party."/1 Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile. Foman v. Davis, 371 U.S. 178, 181-82 (1962); Bethany Pharm. Co. v. QVC Inc., 241 F.3d 854, 861 (7th Cir. 2001).

We accept the representation of Campania's attorney that CGI was placed

into liquidation upon filing its bankruptcy petition some time after this case was removed to federal court./2 Fed. R. Civ. P. 11(b). However, nothing in this record supports Campania's argument that it attempted to amend the complaint and assert an agency theory soon after learning of CGI's bankruptcy. This record is barren of any evidence establishing the date when CGI became insolvent, or when the Ohio state court began liquidation proceedings, or when Campania's corporate officers became aware of these facts, or even when counsel himself learned of this information from his client. Even if Campania had supplied the court with these facts, we would find it hard to believe that Campania had no knowledge whether it was an agent or a contractual partner of CGI at the time this civil action was filed./3 If Campania had a viable agency defense to Rooks's contract claim, then it has failed to offer any explanation why the existence of that defense was dependent in any way on whether CGI was (or was not) in liquidation. Thus, the district court could have reasonably determined that the proposed amendment was unduly delayed. Doe v. Howe Military Sch., 227 F.3d 981, 989-90 (7th Cir. 2001); In re Stavriotis, 977 F.2d 1202, 1204-05 (7th Cir. 1992); Justice, 820 F.2d at 240-41; Murphy v. White Hen Pantry Co., 691 F.2d 350, 353-54 (7th Cir. 1982).

   Furthermore, we believe that it was reasonable for the trial judge to conclude that Rooks would have been unduly prejudiced had she granted Campania's untimely motion. A trial court may deny leave to amend when the amendment would cause the opposing party to bear additional discovery costs litigating a new issue and the moving party does not offer to reimburse the nonmoving party for its expenses. Cf. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 599 (5th Cir. 1981); Select Creations Inc. v. Paliafito Am. Inc., 830 F. Supp. 1213, 1218 (E.D. Wis. 1993); 6 Wright, Miller & Kane, Federal Practice & Procedure sec. 1486 at 606-07 (1990).

   Campania's agency defense would have complicated this straightforward breach of contract dispute by raising additional, complex issues merely six days prior to the discovery deadline that

was agreed upon by both parties. See Caliguiri v. First Colony Life Ins. Co., 318 Ill. App.3d 793, 800 (1st Dist. 2000) (noting that questions of agency are complicated questions of fact). Because Campania admitted in its original answer that it retained Rooks, Rooks could not have foreseen the possibility of litigating whether CGI was legally responsible for paying Rooks's bills. The parties had conducted no discovery on this subject, and discovery would have delayed this matter for several months, for at least three potential witnesses were no longer employed by CGI or Campania by the time the motion was filed. We are convinced that the trial judge was acting within her discretion when she denied Campania's motion to amend its answer and further barred Campania from introducing any evidence to support this defense. Principal Mut. Life Ins. Co. v. Charter Barclay Hosp. Inc., 81 F.3d 53, 57 (7th Cir. 1996); Sanders v. Venture Stores Inc., 56 F.3d 771, 773-74 (7th Cir. 1995); Murphy, 691 F.2d at 353.

It also was proper to deny Campania's motion to include what it called the "affirmative defense" that, if the factfinder should determine that Campania was contractually obligated to pay Rooks's invoices, then the amount due should be offset by the amount of damages allegedly caused by Rooks's legal malpractice. A court may determine that a proposed amendment is futile if it sets forth facts or legal theories that are redundant, immaterial, or unresponsive to the allegations in the complaint. DeSalle v. Wright, 969 F.2d 273, 277-78 (7th Cir. 1992). Campania tells us that the purpose of its amendment was to clarify the reasons why Campania refused to pay Rooks's bills. (Br. at 16-18.) We are convinced that such an amendment was unnecessary because the burden of proving substantial performance of the agreement rested upon Rooks--not Campania. Wildman, Harrold, Allen & Dixon v. Gaylord, 317 Ill. App.3d 590, 601 (1st Dist. 2000). Campania's original answer denied breaching the contract on the grounds that Rooks "failed to handle the case with reasonable care and skill." (Doc. No. 8 para. 3.) This denial, on its own terms, squarely placed at issue the question of whether Rooks fulfilled its contractual obligations, including its

duty of care. Thus, the so-called "affirmative defense" raised in Campania's amended answer was properly rejected as superfluous./4 DeSalle, 969 F.2d at 277-78; see also State Farm Mut. Auto Ins. Co. v. Riley, 199 F.R.D. 276, 279 (N.D. Ill. 2001).

2. Motion to file counterclaim and continue trial

We next consider Campania's claim that the district judge abused her discretion when refusing to allow Campania to file a counterclaim, extend discovery, and stay the case indefinitely pending the resolution of a separate lawsuit filed against Campania in Illinois state court. Because Campania filed the motion nine days after the deadline for discovery had passed--a deadline agreed to by the parties several months earlier--the district court denied the motion as untimely. Upon review of the court's decision for an abuse of discretion, United States v. 1948 S. MLK Dr., 270 F.3d 1102, 1110 (7th Cir. 2001), we conclude that Campania failed to demonstrate any good cause that would justify its delay.

In this case, the district court, acting upon a joint motion of the parties, entered a scheduling order barring any further discovery proceedings after January 22, 2001. Campania sought to reopen discovery after Mann initiated a lawsuit against Campania in Illinois state court on January 25, 2001. Campania tendered only the first two payments required under the settlement agreement but thereafter fell behind in its obligations; Mann's lawsuit sought to recover the damages Campania owed him. In the proposed counterclaim filed in federal court, Campania sought reimbursement for these damages because it alleged that the Rooks law firm committed malpractice when it drafted an agreement making Campania--rather than CGI--the party liable for paying the settlement. Campania requested discovery into Rooks's alleged malpractice. Campania also asked Judge Conlon to stay the federal case until such time as the pending state court action proceeded to a judgment purportedly establishing Campania's full amount of liability. Based on the record before us, we are convinced that the trial court's denial

of Campania's motion was proper.

"Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation." 1948 S. MLK Dr., 270 F.3d at 1110. When a party fails to comply with a deadline imposed in a scheduling order, Rule 16(b) of the Federal Rules of Civil Procedure provides that the "schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Campania argues that it showed good cause for its delay, asserting that it could not have sued Rooks until Mann sued Campania to enforce the settlement agreement. This argument, however, is premised upon a misunderstanding of contract law. A party's rights and duties under any contract--including a settlement agreement, Pohl v. UAL Inc., 213 F.3d 336, 338 (7th Cir. 2000)--accrue at the time of the contract's formation rather than the date when one of the parties sues the other for damages. See, e.g., Casey v. Forest Health Sys., 291 Ill. App.3d 261 (1st Dist. 1997); see also Black's Law Dictionary 322 (1990) (defining "contract"). Thus, Campania could have sought recovery from Rooks as early as September 1999, when Campania signed the settlement agreement that Rooks had prepared./5 Its two-year delay in bringing suit is unexplained in this record to our satisfaction.

In addition, to the extent that Campania's motion also requested the court to stay its case pending resolution of Mann's later-filed state court lawsuit--a case to which Rooks was not even a party--the motion should have been summarily denied. Perrian, 958 F.2d at 195 ("the burden to the judicial system can justify a denial of a motion to amend even if the amendment would cause no hardship at all to the opposing party"). We encourage the district courts to use a firm hand when shepherding cases to trial, carefully and thoughtfully adhering to the deadlines established after consultation with the parties pursuant to Rule 16 and Rule 26(f) in order to "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Campania should not have removed this case to federal court if it wished to proceed in a leisurely fashion, and we cannot perceive

any reversible error with the court's treatment of Campania's pre-trial motions. Bethany, 241 F.3d at 861; Perrian, 958 F.2d at 194-95.

B. Breach of Contract

The next issue we address is whether the district court erred when finding in favor of Rooks on its claim of breach of contract. Campania has waived any argument that Rooks failed to present sufficient evidence to support the conclusion that there was a written contract between Rooks and Campania, that Rooks substantially performed its obligations under the contract, or that the Rooks law firm's fees and hours were reasonable./6 Campania's sole argument is that the court should have concluded that "Campania was not liable to Rooks because Campania was an agent for a disclosed principal--CGI." (Br. at 22.) Because Campania has raised a question of law (i.e., whether the trial judge should have taken account of principal-agency law when she analyzed the parties' contract), we apply de novo review. Arnhold v. Ocean Atl. Woodland Corp., 284 F.3d 693, 699 (7th Cir. 2002). We hold that the court properly avoided venturing into the realm of agency law, for Campania failed to raise this issue in its pleadings.

A party cannot obtain recovery or base its affirmative defense on legal theories that are not contained in the pleadings. See, e.g., Grain Traders Inc. v. Citibank, 160 F.3d 97, 105 (2d Cir. 1998) (declining to consider claim of assignment that was not raised in pleadings); Insurance Co. of N. Am. v. Moore, 783 F.2d 1326, 1327-28 (9th Cir. 1986) (per curiam) (declining to award relief available only under an unplead cause of action).

We explained in Part II.A that Campania's answer admitted the allegation that it hired Rooks to defend MRSI against the products liability suit filed against MRSI in Illinois state court. (Doc. No. 8 para. 1.) Neither in response to Rooks's complaint nor as part of its affirmative defense did Campania suggest that it was CGI's agent. Furthermore, when Campania sought to amend its answer and include various agency theories, the motion was properly denied as untimely

and prejudicial. At trial, however, Campania's attorneys asked questions of several witnesses designed to demonstrate that the Rooks law firm knew or should have known that Campania was CGI's agent for purposes of retaining counsel for CGI's insureds. (Tr. 24-25.) Because such evidence was in the record, Campania argues that the trial court should have found that Rooks was required to collect its fees from CGI. See Vander Wagen Bros. v. Barnes, 15 Ill. App.3d 550, 553-54 (1st Dist. 1973) (holding that principal may be liable for contracts signed by agent if principal's identity is disclosed).

We cannot accept Campania's characterization of the record, for while the district judge acknowledged that certain statements about CGI's hiring of Campania "crept into the statements and arguments of counsel, as well as some of the questioning of witnesses," it is universally known that statements of attorneys are not evidence. Furthermore, the trial judge properly ruled that Campania could not rely on any evidence in order to establish an agency relation ship with CGI because Campania failed to raise such an affirmative defense in its answer. (Tr. 150-51.) Thus, the issue of agency was not properly before the court, and the trial judge correctly refused to consider any evidence submitted on this front. Grain Traders, 160 F.3d at 905.

C.  Prejudgment Interest

The final question is whether the court erred when finding that Rooks was entitled to prejudgment interest under the Illinois Interest Act, 815 ILCS 205/2 (1998), in addition to contractual damages. Whether to award interest on liquidated damages involves the application of law to fact. Thus, we have reviewed the trial judge's decision for clear error. Arnhold, 284 F.3d at 699. Campania argues that such an award was improper because Campania disputed any liability under the contract and that, as a result, the damages were unknown until the very date when the court entered judgment in Rooks's favor. We conclude that Campania has offered no persuasive reason for disturbing the court's decision.

Illinois law provides for interest on

money that becomes "due on any bond, bill, promissory note, or other instrument of writing." 815 ILCS 205/2 (1998). The Illinois Appellate Court recently defined the proper application of the statute as follows:

An instrument in writing within the meaning of the statute is one that sets up a creditor-debtor relationship. Prejudgment interest will be awarded for amounts due on an instrument in writing if the amount was liquidated or was easily computed. If the amount is determinable, interest can be awarded on money payable even when the claimed right and the amount due require legal ascertainment. A good-faith dispute would preclude an award for prejudgment in claims brought for unreasonable refusal to pay but would not preclude an award in a claim brought under a written instrument.

Krantz v. Chessick, 282 Ill. App.3d 322, 327-28 (1st Dist. 1996) (internal citations omitted).

In support of its argument that attorney's fees are unliquidated, Campania cites Wildman, Harrold for the well-known proposition that "Rule 1.5 of the Illinois Rules of Professional Conduct requires that all fees for legal services be reasonable." 317 Ill. App.3d at 601. Thus, the judiciary has an obligation to determine whether legal fees are fair and just whenever they are challenged in a fee petition, a common law claim of breach of contract, or an equitable proceeding for unjust enrichment. Id. Because of the possibility that the invoices submitted by an attorney may be challenged by the client--and in some instances may be determined to be unreasonable--Campania believes that attorney's fees cannot be determined until the court rules on the client's challenge. For this reason, Campania contends that interest may never be awarded on any contract for legal services. We disagree with Campania. We hold that prejudgment interest may be awarded on contracts for legal services provided that: (1) the invoices clearly delineated the hours and rates charged and spent on the matter; and (2) the court finds that the requested fee is reasonable.

Courts applying Illinois law have awarded prejudgment interest when the entire amount detailed in the invoices was found to be reasonable. See, e.g., Medcom Holding Co. v. Baxter Travenol Labs Inc., 200 F.3d 518, 519 (7th Cir. 1999); South Bend Lathe Inc. v. Amsted Indus. Inc., 925 F.2d 1043, 1049 (7th Cir. 1991); Krantz, 282 Ill. App.3d at 328; Chicago Mill & Lumber Co. v. Townsend, 203 Ill. App. 457, 1916 WL 2774 at *6 (2d Dist. 1916). In this case, the court credited Rooks partner Frank Rowland's testimony that he routinely mailed invoices to Campania's director of claims every one or two months, with only minor exceptions. The court further found that the charges were reasonable. Campania never has claimed that Rooks overbilled in terms of time expended or hourly rates. Thus, Campania's bills accrued and were easily discernible at the time they were incurred.

"Interest may be awarded 'although a good faith defense exists and even where the claimed right and the amount due require legal ascertainment.'" Ash v. Georgia Pac. Corp., 957 F.2d 432, 439 (7th Cir. 1992) (quoting LaGrange Metal Prods. v. Pettibone Mulliken Corp., 106 Ill. App.3d 1046, 1054 (1st Dist. 1982)). "Defenses and offsets do not make a sum actually awarded less ascertainable." Id. The extent of Campania's liability was uncertain only in the sense that Campania argued that Rooks breached the contract. We reject Campania's argument that the trial court clearly erred when awarding interest in this case.

III.  CONCLUSION

We are convinced that the district judge acted within her discretion by denying Campania's untimely and prejudicial pre-trial motions. After conducting a one-day bench trial, the court also made reasonable findings of fact and reasonably awarded prejudgment interest on the money due to the Rooks law firm. The judgment of the district court is AFFIRMED.

FOOTNOTES

/1 Under Rule 16(b)(1) of the Federal Rules of Civil Procedure, district courts are required to issue a scheduling order that, among other things, "limits the time to join other parties and to

amend the pleadings." We were surprised to see that, although the trial judge did enter a Uniform Scheduling Order, (Doc. No. 6), which was later revised, (Doc. No. 13), the order failed to delineate a deadline for amending the pleadings. In the absence of such an order, we shall analyze this particular issue under the rubric of Rule 15. We do insist, however, that the district courts faithfully follow the strictures of Rule 16(b) in future cases. See also N.D. Ill. L.R. 16.1.

/2 Rooks disputes this assertion, primarily because Campania never filed a copy of the order of liquidation with the district court, as is customary in proceedings involving the assets of insolvent insurers. See, e.g., Rewerts v. Reliance Ins. Co., 170 F. Supp.2d 847, 848-49 (C.D. Ill. 2001); Reliance Nat'l Indem. Co. v. Pinnacle Cas. Assur. Corp., 160 F. Supp.2d 1327, 1333-34 (M.D. Ala. 2001). As explained in this section, Campania failed to satisfy the requirements of Rule 15(a) even we give Campania the benefit of the doubt on this point. Any remaining factual disputes, therefore, do not effect our decision.

/3 CGI agreed to indemnify Campania for its expenses. At oral argument, Campania admitted that it wished to assert its agency theories only after learning of CGI's bankruptcy, so as to absolve itself of liability in the underlying lawsuit rather than find itself waiting in line for reimbursement along with the rest of CGI's unsecured creditors. Campania might possibly have avoided this problem if it had adopted a more sensible pre-trial strategy and brought CGI into the lawsuit at its inception, pursuant to Rule 14 of the Federal Rules of Civil Procedure.

/4 Campania also suffered no prejudice from the denial of its motion because it had the opportunity to introduce evidence in support of the position that Rooks tendered substandard representation. (Tr. 44-49, 71-75, 103-09). The court obviously found this evidence unpersuasive, ruling that "[t]he pleadings and credible testimony explained the reasonableness of the professional work that [Rooks] provided in accordance with its contract with the defendant for legal services." (Tr. 153.)

/5 Campania's briefs in support of the motion to amend concede that it suffered no prejudice from the court's ruling, for Campania declared that it intended to file the malpractice claim as a third-party claim in the underlying suit pending in Illinois state court. (Doc. No. 21 para. 7.) While nothing in this record clarifies whether Campania actually filed such a claim, the availability of an alternative forum is a factor to

consider when ruling on a motion to amend a complaint and assert new causes of action. See 6 Wright, Miller & Kane, supra sec. 1487 at 621 ("the court will consider the position of both parties and the effect the request will have on them").

/6 Although Campania states in one sentence of its opening brief that the court's findings "are not supported by the evidence," (Br. at 21), Campania devotes the remaining portion of the brief arguing questions of agency law. Perfunctory and undeveloped arguments are waived, especially when, as here, "a party fails to develop the factual basis of a claim on appeal and, instead, merely draws and relies upon bare conclusions." Spath v. Hayes Wheels Int'l-Ind. Inc., 211 F.3d 392, 397 (7th Cir. 2000).