PATRICIA T. KRANTZ, Ex'r of the Will of Quentin R. Krantz, *et al.*, Petitioners-Appellees and Cross-Appellants, v. KENNETH C. CHESSICK, Respondent-Appellant and Cross-Appellee.

First District (3rd Division) No. 1—95—0455

Opinion filed June 26, 1996.

John W. Fisk, of Schaumburg, for appellant.

James R. Madler, of Chicago (Paul E. Peldyak, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

Respondent, Kenneth C. Chessick, appeals from a judgment order of the circuit court of Cook County finding in favor of petitioners, Patricia T. Krantz, executor of the will of Quentin R. Krantz, and Jay S. Bleecker, in a dispute over the amount of attorney fees owed to respondent. Petitioners cross-appeal. We affirm.

## I. Facts

Quentin R. Krantz (Krantz) and Bleecker hired respondent, an attorney, to prosecute their claims, and each executed a retainer contract, which stated in part:

> "I agree to pay KENNETH C. CHESSICK for services to be rendered pursuant to this retainer and employment, a sum equal to thirty-three and one-third percent (33-1/3%) of any sum which may be received on my said claim and cause of action on trial in Court, or which I receive in settlement thereof *** together with all reasonable and necessary advances, costs and expenses, if any, paid or incurred by the law office."

Respondent represented Krantz and Bleecker, who were plaintiffs in a lawsuit in federal court. A jury awarded Krantz $160,000 ($60,000 were punitive damages) and awarded Bleecker $20,000 ($10,000 were punitive damages), but no judgment was entered. Respondent filed a motion seeking an award of costs and attorney fees for Bleecker pursuant to the federal civil rights law (42 U.S.C.A. § 1988 (West 1994) (section 1988)). The motion was never ruled upon.

The federal case was settled for $195,000. There was one settle-

ment check for the entire amount, and the release form did not allocate the funds between Krantz and Bleecker. Krantz and Bleecker signed over the settlement check to respondent, who tendered a $71,532.50 check to Krantz ($73,668 minus $2,135.50 in unpaid costs) and a $19,531.50 check to Bleecker ($21,667 minus $2,135.50 in unpaid costs). Based on their belief that they were entitled to more settlement money, Krantz and Bleecker refused the checks, one of which was marked "Final Settlement Krantz" and the other "Final Settlement Bleecker." Respondent placed the funds in a trust account with interest paid to the Lawyers Trust Fund of Illinois, apparently pursuant to Rule of Professional Conduct 1.15(d) (134 Ill. 2d R. 1.15(d)).

Krantz died and his widow initiated proceedings in the probate court to recover his settlement proceeds from respondent. Bleecker intervened in the case to pursue his claim against respondent. The trial court made an interim order for respondent to pay to Krantz's estate and to Bleecker the amounts of the checks previously tendered by respondent.

Petitioners moved for summary judgment. Respondent swore to the following in an affidavit in opposition: In a settlement conference in the federal case, the judge indicated that he would reduce Krantz's punitive damages award to $40,000 and Bleecker's punitive damages award to $5,000, he would recommend a total $205,000 settlement in which Krantz would receive $120,000 (subject to the contingency agreement), Bleecker would receive $20,000 (not subject to the contingency agreement), and respondent would receive $65,000 in section 1988 attorney fees. Respondent discussed the judge's recommendation with Krantz and Bleecker, who agreed to the judge's recommended $205,000 settlement and allocation of the settlement, but the federal defendants would settle only for $195,000.

Respondent prepared a file memorandum that stated that Bleecker and Krantz agreed to settle for $195,000, with Bleecker, Krantz, and respondent each reducing their recovery by $3,333.33 (one-third of the $10,000 difference between the $205,000 and the $195,000), and with the expenses to be divided equally by Bleecker and Krantz. According to respondent's calculations, Krantz would receive $73,668, Bleecker would receive $21,667, and respondent would receive $99,665.

A trial was held in the probate court after the motion for summary judgment was denied.

Respondent Chessick testified at the trial that in a meeting in October 1988 he informed Bleecker of the possibility of the federal court making an award of section 1988 attorney fees. He told

Bleecker that if the court awarded attorney fees, his firm would be entitled to them. They had several discussions about the section 1988 attorney fees, after which Bleecker signed the retainer contact.

Jay Bleecker testified at the trial that there was no discussion about the fee agreement before he signed the retainer contract. Respondent only mentioned section 1988 attorney fees once, after the fee agreement was signed. He and Krantz refused to accept the checks Chessick tendered because the amounts were incorrect.

On December 2, 1994, the trial court entered a judgment order, which stated in part: (1) petitioners Krantz and Bleecker were entitled to $125,729, which represented the settlement amount less a one-third contingency fee payable to respondent and less expenses; (2) petitioners were entitled to judgment against respondent for $9,891.78 in interest on $125,729 for the period from February 11, 1991, through January 25, 1993, plus $34,665 of the funds that were previously sequestered by the court, together with any accrued interest; and (3) petitioners were entitled to their costs of litigation but not attorney fees.

Respondent filed a motion to reconsider and vacate. The motion was denied on January 6, 1995.

Respondent appealed, and petitioners cross-appealed.

## II. Respondent's Appeal

■ Respondent Chessick argues that the contingency-fee agreement did not address the allocation of section 1988 attorney fees because they were covered by an oral agreement providing that if they were awarded to Bleecker, respondent would be entitled to only the section 1988 fees and not to the one-third contingency fee. Respondent argues that he was entitled to $65,000 in section 1988 attorney fees for Bleecker's case and to $34,665 as the contingency fee for Krantz's case. Petitioners argue that the only fee agreement was the written agreement and that respondent was not entitled to $65,000 in section 1988 attorney fees.

The parties disagree over the application of the parol evidence rule, over whether the alleged section 1988 agreement was a modification of the original fee agreement, and over the existence of consideration for the alleged section 1988 agreement, but we do not reach these issues because the trial court heard the evidence and entered judgment in favor of petitioners. The trial court determined that the parties did not enter into an oral agreement concerning section 1988 attorney fees.

Bleecker testified that there never was an agreement that respondent was to get any section 1988 attorney fees. Respondent testi-

fied that there were several discussions about section 1988 attorney fees and that there was an oral agreement followed by the execution of the retainer contract. The trial court held that any oral agreement regarding attorney fees that preceded the written retainer contract merged into the retainer contract. The retainer contract governed the terms of the attorney-client relationship in the federal lawsuit.

Respondent argues that he properly testified about an agreement concerning a matter that was not part of the original contingency-fee agreement, but the fact remains that the trier of fact made the determination, after weighing the credibility of the witnesses, that the only fee agreement with Bleecker was the written contingency-fee agreement.

A trial court's findings of fact will not be overturned unless they are against the manifest weight of the evidence. *Cosmopolitan National Bank v. Cook County,* 103 Ill. 2d 302, 318, 469 N.E.2d 183 (1984). We hold that the trial court's findings of fact were not against the manifest weight of the evidence. The trial court correctly calculated the amounts of the attorney fees and the settlement proceeds due to petitioners.

Respondent next argues in his appeal that the award of prejudgment interest to petitioners was erroneous primarily because the funds were unliquidated and because he acted in good faith.

■ The interest statute provides for interest on money, including money that becomes "due on any bond, bill, promissory note, or other instrument of writing." 815 ILCS Ann. 205/2 (West 1993). A reviewing court may reverse a determination of prejudgment interest only if it is against the manifest weight of the evidence. *Boyd v. United Farm Mutual Reinsurance Co.,* 231 Ill. App. 3d 992, 1000, 596 N.E.2d 1344 (1992).

■ An instrument in writing within the meaning of the statute is one that sets up a creditor-debtor relationship. *Wilder Binding Co. v. Oak Park Trust & Savings Bank,* 173 Ill. App. 3d 34, 42-43, 527 N.E.2d 354 (1988), *rev'd on other grounds,* 135 Ill. 2d 121, 552 N.E.2d 783 (1990). Prejudgment interest will be awarded for amounts due on an instrument in writing if the amount was liquidated or was easily computed. *Oldenburg v. Hagemann,* 207 Ill. App. 3d 315, 327, 565 N.E.2d 1021 (1991). If the amount is determinable, interest can be awarded on money payable even when the claimed right and the amount due require legal ascertainment. *Martin v. Orvis Brothers & Co.,* 25 Ill. App. 3d 238, 251, 323 N.E.2d 73 (1974). A good-faith dispute would preclude an award for prejudgment interest in claims brought for unreasonable refusal to pay but would not preclude an award in a claim brought under a written instrument. *Michigan Avenue*

*National Bank v. Evans, Inc.*, 176 Ill. App. 3d 1047, 1061-62, 531 N.E.2d 872 (1988).

■ We find that the contingency-fee agreement was an instrument in writing within the meaning of the interest statute, that the amounts due to petitioners were easily calculable, and that an award of prejudgment interest was appropriate under the circumstances of this case. As there was no agreement that respondent would be entitled to section 1988 attorney fees in lieu of the one-third contingency amount, there was no justification for respondent to retain more than what was owed under the contingency-fee agreement. This was not the case where opposing parties in a dispute over a claim to money had different legal positions on the division of the money. Here there were conflicting accounts on whether there was in existence an agreement that would provide the basis for only one party's claim to the money at issue. Only the credibility of the parties was at issue.

■ Respondent argues that he tendered the undisputed amounts in compliance with Rule of Professional Conduct 1.15(b), which requires that an attorney is to promptly deliver to his client any funds that the client is entitled to receive. 134 Ill. 2d R. 1.15(b). Respondent tendered the undisputed amounts to his clients on more than one occasion. We note that these checks were marked "for final settlement" or similar language, which indicated that the checks were probably meant to be full payment. The clients' acceptance of these checks as labeled might have discharged their claims for additional money from respondent. See *A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.*, 243 Ill. App. 3d 905, 911, 611 N.E.2d 619 (1993) (when there is an honest dispute of the amount due and the debtor tenders a check with the explicit understanding of both parties that it is full payment of all demands, acceptance and negotiation of a check with notice of the condition is an accord and satisfaction).

Respondent's tender of the undisputed funds was not unrestricted, and petitioners were deprived of the use of all their funds. We hold that petitioners are entitled to an equitable award of prejudgment interest on the entire balance owed to them and not just on the amount tendered by respondent in the checks. See *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 119, 559 N.E.2d 819 (1990) (prejudgment interest was awarded for client for excessive attorney fees to compensate client for time that she was deprived of the use of those funds).

### III. Petitioners' Cross-Appeal

Petitioners argue that the trial court erred in not deducting expenses before computing the contingency fees owing to respondent.

■ Rule of Professional Conduct 1.5(c) provides in part:

"A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, *and whether such expenses are to be deducted before or after the contingent fee is calculated.*" (Emphasis added.) 134 Ill. 2d R. 1.5(c).

■ Respondent's contingency-fee agreement stated in relevant part that the clients agreed to pay one-third of any sum received on their claims "together with all reasonable and necessary advances, costs and expenses" paid by respondent. Although the agreement could have clearly stated that expenses would be deducted "after" the contingency fee was calculated, we interpret the word "together" as having the same meaning. A writing is ambiguous if the language is susceptible to more than one meaning or if the meaning is obscure. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 888, 652 N.E.2d 1233 (1995). This agreement is not ambiguous because it is not an equally plausible interpretation that the expenses were to be deducted before the contingency fee was calculated.

Petitioners next argue that the trial court erred in not awarding them the fees they paid to an attorney to recover the settlement money from respondent.

■ Under the general "American" rule, a successful litigant may not recover his attorney fees unless authorized by statute or by agreement. *Dreyfuss Metal Co. v. Berg*, 210 Ill. App. 3d 189, 199, 569 N.E.2d 19 (1990). Petitioners argue that one who commits a wrongful act is liable for all the ordinary and natural consequences of his act, including attorney fees in bringing a lawsuit against the wrongdoer. Petitioners cite in support *Nalivaika v. Murphy*, 120 Ill. App. 3d 773, 458 N.E.2d 995 (1983), in which the court held that attorney fees were recoverable if they were incurred in litigation with third parties and if they were necessitated by defendant's wrongful act. Petitioners also cite *Sorenson v. Fio Rito*, 90 Ill. App. 3d 368, 371, 413 N.E.2d 47 (1980), in which the court found to be recoverable the attorney fees of a second attorney hired by plaintiff to attempt to obtain refunds of tax penalties that were assessed solely as a result of a former attorney's negligence.

■ The Illinois Supreme Court in *Ritter v. Ritter*, 381 Ill. 549, 554, 46 N.E.2d 41 (1943), noted the general rule that "where the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to incur expenses to protect his interest, the plaintiff can

then recover damages against such wrongdoer, measured by the reasonable expenses of such litigation, including attorney fees." Petitioners in the underlying action have not been involved in litigation with third parties as a result of respondent's conduct. Nor were petitioners compelled to incur expenses to protect their interests. Petitioners had to file suit to recover their money because of' respondent's conduct, but the American rule bars successful plaintiffs from recovering attorney fees.

Petitioners also rely on *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 115 L. Ed. 2d 27, 45, 111 S. Ct. 2123, 2133 (1991), which held that attorney fees can be awarded by federal courts when the party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers* discussed the federal courts' inherent power to assess attorney fees for fraud committed on a court, for a party's bad faith in delaying or disrupting litigation, or for the hampering of enforcement of a court order. None of these types of conduct—engaged in after commencement of litigation—are involved in the underlying action. Furthermore, in Illinois there is no bad-faith exception to the American rule on attorney fees. *Cummings v. Beaton & Associates, Inc.*, 249 Ill. App. 3d 287, 320, 618 N.E.2d 292 (1992).

The judgment of the trial court is affirmed.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.