In re LINC CAPITAL, INC., Debtor.

Linc Capital, Inc., Plaintiff,

v.

Interlink Electronics, Inc., Defendant.

Bankruptcy No. 01 B 03320.
Adversary No. 02 A 0007.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 21, 2004.

Dennis A. Dressler, Askounis & Borst, Kansas City, MO, for Plaintiff.

Howard L. Teplinsky, Seidler & McErlean, Chicago, IL, for Defendant.

### *AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW*

JACK B. SCHMETTERER, Bankruptcy Judge.

This adversary proceeding relates to the Chapter 7 bankruptcy case of Plaintiff Linc Capital, Inc. ("Linc"). It is a replevin action to recover manufacturing equipment leased by Linc to Defendant Interlink Electronics, Inc. ("Interlink"). Count I was separately tried to money verdict covering rental of the equipment until July 1, 2001. On February 5, 2003 an Agreed Judgment Order was entered in Count II requiring Interlink to return all leased equipment by a specified date. Interlink returned one piece of equipment ("Joshua Machine") but not the rest.

Linc requests recovery of $184,025 for value of the unreturned equipment, plus a fair market rental rate of the equipment of $25,307.92 from June 3, 2003 to January 6, 2003, plus prejudgment interest at a rate of 5% from June 3, 2003 until the date judgment is entered herein. Interlink agrees that Linc is entitled to recover the value of the equipment not returned, but disputes that value and objects to any award of interest or fair market rental rate.

Based on Findings of Fact and Conclusions of Law made and entered below,

Linc will recover $55,000 for the value of the unreturned equipment, plus a fair market rental of $5,032.79 for the unreturned equipment and $6,039 39 in fair market rent for the Joshua Machine, plus prejudgment interest.

## FINDINGS OF FACT

Findings of Fact are based on evidence presented at trial.

1. Linc Capital, Inc. is a Delaware corporation that provided specialty finance, asset-based financing, equipment leasing, and equipment rental and distribution services to high-tech companies. Linc filed for bankruptcy protection under Title 11 of Chapter 11 of the United States Bankruptcy Code on March 2, 2001.

2. Interlink Electronics is a California Corporation with its principal place of business in Camarillo, California. Interlink designs and manufactures intuitive interface technologies and products.

3. Between May 30, 1995 to September 30, 1995 Interlink and Linc entered into a series of lease agreements and schedules providing that Linc would lease to Interlink computing and specially designed manufacturing equipment. (Compl. Exh. A–D; Compl. ¶ 6–9; Answ. ¶ 6–9)

### Procedural History

4. Linc filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on March 2, 2001 and has since continued possession of its property and managed its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. Linc's confirmed plan of reorganization authorizes Linc's Estate Administra-tor to prosecute this action in its name against Interlink. (Amended Joint Plan of Reorganization, Article VII, Sec. 2.)

6. On January 4, 2002 Linc filed this two-count Adversary Complaint alleging breach of the lease agreement for non-payment of rent for unreturned equipment in Count I, and seeking recovery of the leased equipment and damages for unreturned equipment in Count II.

7. Count I alleged breach of the lease agreements and schedules. The lease agreement required Interlink to exercise an end-of-lease-term option, choosing (1) to continue to pay rent equal to a fair rental value for any equipment not returned, or (2) to purchase the equipment for a price calculated at the fair market value, or (3) to return the equipment. Compl. Exh. A.

8. The leased equipment was neither returned nor purchased. Following trial, judgment was entered in favor of Linc on Count I against Interlink in the amount of $128,429.76, calculated by the Court as the fair market rental value of the equipment from the end of the rental leases until July 1, 2001.

9. The parties agreed on a Judgment Order of Replevin which was entered in Count II ("Judgement Order" or "Order") requiring Interlink to return all the leased equipment (described below as Findings 13, 14, and 15) within a specified period. (Plaintiff's Am. Exh. 1, Agreed Judgment of Replevin Under Count II)[1] The parties subsequently agreed to extend the deadline to May 5, 2003. (Testimony of Mark Arvin, Arvin Tr. at 56)[2] The Count II Judgment Order provided that if the equipment was not returned to Linc "this Court retains jurisdiction to rule on Linc

1. "Pl.'s Am. Exh." refers to the Plaintiff's Amended Exhibits admitted at trial. "Def.'s Exh." refers to the Defendant's exhibits admitted at trial.

2. "Arvin tr." here and similar references below refer to the transcript of Mr. Arvin's testimony at the trial proceeding on January 6, 2004.

Capital Inc.'s prayer for monetary relief for the value of Equipment not returned." (Plaintiff's Am. Exh. 1, Agreed Judgment of Replevin Under Count II)

10. Following entry of that Judgment Order, the parties attempted to negotiate a purchase price for the equipment, but ultimately failed to reach an agreement. By the May 5, 2003 deadline, Interlink had not returned the equipment. (Arvin Tr. at 110)

11. Linc demanded return of the equipment from Interlink but Interlink failed to return it. (Arvin Tr. at 99)

12. On June 30, 2003 Linc filed a motion to enforce the Judgment Order. (*See* Motion for Judgment for the Value of Equipment Not Returned Pursuant to Agreed Judgment of Replevin Under Count II, June 30, 2003.)

13. In late August of 2003, Interlink returned one piece of the leased equipment, a Joshua 12 Station Assembly System ("Joshua Machine"). However, the Joshua Machine was not returned pursuant to terms of the lease agreement which required Interlink upon its return to furnish a letter from the manufacturer of the Joshua Machine or another service organization certifying that the Machine was in good working order, subject only to reasonable wear and tear resulting from proper use thereof, and that such Machine was eligible for a maintenance agreement by its manufacturer. All related software was also not returned. Compl. Exh. A.

14. Interlink did not return any of the other leased equipment specified in the Judgment Order, which consisted of the following:

Rol–Lift 1,500 Lbs Electric Pallet Lift

Rosenthal 30″ Model Master Sheet Cutter

Branson Model 941AE Ultrasonic Welder Model 943 controls

Inventek Circuit Board Laminator (2½ × 3/4)

Inventek Circuit Board Laminator (2½ × 2)

Inventek Circuit Board Laminator (1½ × 2)

Inventek Circuit Board Laminator (1½ × 2)

Innovate Model 300 Laminator

Light Table 40 × 60

Millington Model Light Table

Assorted Lockers

LeCroy 930M Oscilloscope

Hewlett Packard 34401 Multimeter

Assorted Molds and tooling

Exabyte Tape Drive Back-up

(2) Intel Print Server Switch

Hewlett Packard 48 Port Hub

Lap Top Computer

Zip Drive

Hewlett Packard Model 5 Laser Printer

Lumina Fax Machine

IBM Think Pad Lap Top

Telephone System

Parts Bin System

Eagle Carts

Setra Super Scale

Steel Rule Die Cutting & Bending

Schwab 4 drawer file cabinet

(5) 15″ SVDA Monitors

Personal Computers

Display Booth

Shop Stools

Trade Show Signs

15. Prior to trial on Count I, Interlink transferred the leased molds and tooling to its wholly owned subsidiary in China. (Testimony of Barry Hurwitz, Hurwitz Tr.

at 49)[3] Interlink or its China subsidiary has continued to use portions of the unreturned leased equipment throughout these proceedings.

16. Since the Replevin Judgment on Count II was not complied with, a trial was held to determine value of the unreturned equipment and Joshua Machine and to award damages under the Illinois Replevin Act. That trial started in January 2004 and ended February 2, 2004.

### Valuation of the Equipment

17. Interlink retained Mr. Barry Hurwitz ("Hurwitz") of R.M.C. Industrial Services to give three separate appraisals of the equipment, including the Joshua Machine:

(a) The first Hurwitz appraisal valued all the leased equipment utilizing "in-place" value methodology in the amount of $132,025. That amount included the value of the Joshua Machine separately appraised (also at "in-place" value) at $75,000. (Pl.'s Am. Exh. 5)

(b) The second of Hurwitz's appraisals valued all the leased equipment using a fair market methodology in the amount of $70,750. That amount included the value of the Joshua Machine, appraised at $40,000. (Pl.'s Am. Exh. 5)

(c) The third of Hurwitz's appraisals valued the leased equipment using an auction value methodology, valuing all the leased equipment at $32,875, including the value of the Joshua Machine appraised at $10,000. (Def.'s Exh. 2)

18. Linc retained the services of Mr. Stan Curtis ("Curtis") to conduct a physical inspection, appraise the equipment, prepare the equipment for sale under the presumption that it would be returned.[4]

(a) Curtis testified that he had been in the professional appraising business since 1966 and was certified by the Certified Appraiser's Guild of America. Curtis is a member of the Association of Professional Auctioneers, the Indiana Auctioneers' Association, the National Auctioneers' Association, the National Association of Public Auto Auctioneers and is licensed in the State of Indiana. (Pl.'s Am. Exh. 14)

(b) Curtis also testified that he owned a company that used a piece of equipment that was very similar to the Joshua Machine at issue in this case and that he sold Joshua Machines in the past. (Pl.'s Am. Exh. 14)

(c) Curtis testified based on his years of experience in the industry and sales of the same type of equipment that the unreturned equipment other than Joshua Machine had a liquidation value of $15,000 to $35,000. He separately valued the Joshua Machine as between $50,000 to $150,000. (Pl.'s Am. Exh. 14)

19. Facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

### JURISDICTION AND VENUE

The Judgment Order in Count II stated that "this Court retains jurisdiction to rule on Linc Capital Inc.'s prayer for monetary relief for the value of equipment

---

3. "Hurwitz tr." here and similar references below refer to the transcript of Mr. Hurwitz's testimony at the trial proceedings on January 6, 2004.

4. In connection with the trial of Count I, Linc retained the services of Steven Tatro. Mr. Tatro submitted an appraisal report, but that report was admitted into evidence for the limited purpose of showing Interlink's motive and intent for failing to return the equipment. Tatro's appraisal report therefore will not be considered as substantive evidence of the equipment's value.

not returned." Pl.'s Am. Exh. 1, Agreed Judgment of Replevin Under Count II. A bankruptcy court maintains core jurisdiction to interpret and enforce its orders. *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir.2001); *In re Weber*, 25 F.3d 413, 416 (7th Cir.1994) (bankruptcy court's interpretation of its own confirmation order is entitled to the same deference as accorded any court construing its own judgments). Thus, core jurisdiction lies to determine that the prayer for relief pleaded under Count II of the Complaint included the statutory relief provided in the Illinois Replevin Act under 28 U.S.C. §§ 1334 and 157(b)(2)(E), and it is clear that jurisdiction was indeed reserved in the Count II Judgment to provide such relief. Moreover, core jurisdiction lies under Count II as it relates to recovery of estate property. 28 U.S.C. § 157(b)(2)(E).

The matter is referred here under District Court Internal Operating Procedure 15(a). Venue lies under 28 U.S.C. § 1409(a).

## APPLICABILITY OF THE ILLINOIS REPLEVIN ACT

■ Interlink disputes full applicability of the Illinois Replevin Act, 735 ILL. COMP. STAT. 5/19–101 et seq., arguing that the Judgment Order limited Linc's relief only to the value of equipment not returned. Def.'s Am. Concl. of Law ¶ 3 at 11.

This argument is without merit. The Agreed Judgment Order did not limit or modify the relief pleaded in the Complaint for replevin but reserved jurisdiction to adjudicate monetary damages sought under the Complaint. Count II of the Complaint complied with pleading requirements of the Illinois Replevin Act which sets forth requirements for a replevin cause of action under Illinois law. *See* 735 ILL. COMP. STAT. 5/19–104. A replevin complaint must describe the property to be replevied; state that the plaintiff is the owner of the property or in legal possession; that the property is wrongfully detained by the defendant; and that the property has not been taken for any tax, assessment, or fine or seized under any lawful process or held by virtue of any order for replevin. *Id.* Linc pleaded and proved those facts. The lease agreement and schedules entered into by both parties provided that Illinois law applies. Compl. Exh. A. The Illinois Replevin Act and all of its statutory remedies therefore applies to the present dispute. *See Combined Metals of Chicago Ltd. Partnership v. Airtek, Inc.*, 985 F.Supp. 827 (N.D.Ill.1997) (holding that federal courts must determine if a verified pleading and proof is consistent with [the Replevin Act] before relief may be granted.)

## DAMAGES

The Illinois Replevin Act authorizes damages both for property that is not returned and also for wrongful detention of property. 735 ILL. COMP. STAT. 5/19–101 et seq.

### Damages for the Undelivered Leased Equipment (Value and Lost Rent)

When property due to be returned is not delivered, the owner may recover damages sustained by reason of the wrongful detention. 735 ILL. COMP. STAT. 5/19–120 (2004).

With the exception of the Joshua machine, Interlink never returned the leased equipment. Linc is entitled to the unreturned equipment's value. Linc's expert witness, Mr. Stan Curtis ("Curtis"), testified to the fair market value of the equipment in a deposition admitted into evidence without objection. *See* Pl.'s Am. Exh. 14.

■ Interlink objects to the use of Curtis as an expert witness. Linc responds that since Interlink did not object to the admissibility of Curtis' deposition testimony as an exhibit, Interlink waived its right to object. Interlink replies correctly that it objected during the deposition and that admission of the deposition into evidence preserved its deposition objections.

■ Even without an objection being made, and certainly when it is made, a court must adequately demonstrate by findings on the record that it has performed its duty as "gatekeeper" before accepting expert testimony. 4–702 Weinstein's Federal Evidence § 702.02 (2003) (citing *Goebel v. Denver & Rio Grande Western R.R.*, 215 F.3d 1083, 1088 (10th Cir., 2000)); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

■ An expert may be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702; *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir.2000) ("a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.")

■ Further, a witness may qualify as an expert based on reliable evidence, including deposition testimony. *See, e.g.* 4–702 Weinstein's Federal Evidence § 702.02 ("An evidentiary hearing is not required if the information before the court is sufficient to support a ruling on the reliability of the proposed evidence.")

■ Curtis' deposition testimony established that he has been a certified professional appraiser since 1994. He is also a member of various professional associations and has appraised and valued equipment for almost 30 years. Also, Curtis currently owns his own appraisal company and has previously valued Joshua Machines. Curtis is therefore qualified to testify as an expert in appraisals of machinery and equipment.

Curtis' appraisal in this case regarding value of the leased equipment used proper methodology and relied on his training as an appraiser and past experience. His opinion regarding the value of the leased equipment is certainly relevant and necessary to assist the valuation determination in issue here. *See Walker v. Soo Line R.R.*, 208 F.3d 581, 586 (7th Cir.2000). Curtis was therefore qualified as an expert and his opinion of the value of the leased equipment was properly admissible as an opinion useful to the court.

Curtis appraised the fair market value of the underlying equipment within the range of $15,000 to $35,000. Pl.'s Am. Exh. 14. The basis of his appraisal was his past experience valuing similar types of equipment. Interlink's appraiser Hurwitz used different valuation methodologies (Finding No. 17), but Curtis' appraisal corresponded closely with the auction value opined by Hurwitz. The Hurwitz "in-place" value method was not related to the equipment included here; that equipment if returned would not have been "in-place" at all but would have had to be sold as is on an auction basis, or else installed for some new use at great expense. For the same reasons the "fair market" method requiring long marketing effort and some servicing expenses would not be applicable. Linc will therefore be awarded $25,000 for liquidation value of the unreturned equipment based on guidance from the Curtis and Hurwitz appraisals.

■ Linc also seeks rental value of the unreturned equipment from June 3, 2003 until the end of trial. Pl.'s Concl. of Law ¶¶ 36–43 at 11–13. Interlink disagrees, as-

serting that Linc did not present evidence that it could have leased the equipment to a third party. Def.'s Concl. of Law ¶ 4 at 11. However, the record does contain evidence of at least one lost sale. Curtis testified that he had located a buyer for the equipment but was unable to complete the transaction since the equipment remained in Interlink's possession. Pl.'s Am. Exh. 14. Moreover, Interlink deprived Linc of any opportunity to lease the equipment, for it is impossible to offer something to lease if one does not have possession or control of it. By shipping most of the equipment to its subsidiary in China, Defendant prevented any leasing of it and is hardly in a position to complain that the consequence of its conduct prevented Plaintiff from proving rental value. Linc is entitled to rental value of the equipment.

The lease agreement provided that rental value was to be calculated based on the lease rate factor stated in the lease agreement and schedules, multiplied by the value of equipment. Compl. Exh. B; Pl.'s Am. Exh. 15, Pg. 17.[5] Linc will therefore be awarded $718.97 a month during the period Interlink violated the judgment order until trial, from June 3, 2003 to January 6, 2004, for a total of $5,032.79, based on the following calculation: $25,000 (value) × 2.8759 (lease rate factor) × 7 (months) = $5,032.79.

### Damages for the Joshua Machine

■ Section 19–125 of the Illinois Replevin Act authorizes recovery for wrongful detention of property. 735 ILL. COMP. STAT. 5/19–125 (2004). Damages awarded under this section are intended to provide full indemnity for damages suffered, *Culligan Rock River Water Conditioning Company v. Gearhart III,* 111 Ill.

App.3d 254, 258, 66 Ill.Dec. 902, 443 N.E.2d 1065 (Ill.App.Ct. 2nd Dist.1982), and are measured from the time the property was taken until its return, *Internat'l Harvester Credit Corp. v. Helland,* 130 Ill.App.3d 836, 85 Ill.Dec. 922, 474 N.E.2d 882 (Ill.App.Ct. 2nd Dist.1985).

■ Damages include depreciation in value during the period of wrongful detention and reasonable value of the use of the property during the period of wrongful detention. *International Harvester Credit Corp. v. Helland,* 130 Ill.App.3d 836, 840, 85 Ill.Dec. 922, 474 N.E.2d 882 (Ill.App.Ct. 2nd Dist.1985).

■ Interlink wrongfully detained the Joshua Machine from May 5, 2003 to late August 2003. Before damages can be awarded, the value of the Joshua Machine must be determined.

The parties vigorously dispute the value of the Joshua Machine. Interlink's expert, Hurwitz, inspected the machine in October of 2002 and submitted three appraisal reports. The first was conducted in October 14, 2002 and used a fair market methodology, defined as an opinion of the expected gross dollar amount that the machine could realize if exposed for sale in the open market by a willing seller and willing buyer. Pl.'s Am. Exh. 5, Fair Market Report, October 14, 2002. Hurwitz's first appraisal estimated the fair market value of the Joshua Machine to be $40,000.

Hurwitz's second appraisal was conducted in October 14, 2002 and used an in-place value methodology. He defined in-place value as the worth of the machine to a new buyer in place where the machine is installed and assuming it is operating. Pl.'s Am. Exh. 5, In–Place Report, October 14,

---

5. The lease rate factor is 2.8759% of the estimated equipment cost per month. Compl.

Exh. A.

2002; Hurwitz Tr. at 51. "In-place" value includes the costs of set up and transportation to a new buyer. Hurwitz estimated that the Joshua Machine had an in-place value of $75,000. Of course Linc did not have the machine, let alone have it installed somewhere for sale in place, so this valuation carries little weight here.

Hurwitz's last appraisal was conducted in August 2003. This appraisal used an auction value methodology, defined as the amount realized at a properly prepared and conducted public auction sale, held under forced sale conditions. Although he had inspected the machine for his first two appraisals, Hurwitz did not physically inspect the machine when calculating its auction value. He estimated that the Joshua Machine had an auction value of $10,000, concluding that the machine as currently configured, could only produce Interlink's product and therefore was not marketable. Hurwitz reasoned that the machine would need extensive retooling and engineering before it could be sold for use by anyone other than Interlink.

Linc's expert Curtis inspected the Joshua Machine in February of 2003. Based on his past experience of selling the Joshua Machine and inquiries from prospective buyers, he estimated the value of Linc's Joshua Machine to be between $50,000–$150,000.

Of the evidence in the record, the fair market value for this machine appears to be the most reliable because the Joshua Machine if properly returned could have been marketed to obtain that value. *See* Curtis Testimony, Pl.'s Am. Exh. 14.

Since Interlink returned the Joshua Machine, Linc will not recover the Machine's full value. The full value of property may be recovered only when the property is not found or returned. 735 ILL. COMP. STAT. 5/19–120 (2004); *Wilson v. M & W Gear*, 110 Ill.App.3d 538, 66 Ill.Dec. 244, 442 N.E.2d 670 (Ill.App.Ct. 3rd Dist.1982).

The fair market methodology submitted by Hurwitz is the most accurate indicator of the Machine's value. Hurwitz appraised the Joshua Machine's fair market value as $40,000. That would have been the value awarded to Plaintiff had the Machine not been returned. While that Machine was returned, Interlink did not return the Machine pursuant to the terms of the Lease Agreement and with proof that it was in good working order, depreciating its value to Plaintiff down to the Machine's auction value, $10,000. The reduction in value of $30,000 is what Plaintiff may recover. Linc may also recover the lost rental value for that Machine.

Using the lease rate factor provided in the lease agreement, Linc will be awarded $862.77 for each month Interlink wrongfully detained the machine in violation of the Agreed Replevin Judgment, from June 3, 2003 to January 6, 2004, for a total of $6,039.39 calculated as follows: $30,000 (value) × 2.8759 (lease rate factor) × 7 (months) = $6,039.39.

### Mitigation Issue

 Interlink argues in its post trial brief that any damage award should be reduced since Linc failed to mitigate damages. *Culligan*, 111 Ill.App.3d at 258, 66 Ill.Dec. 902, 443 N.E.2d 1065 (holding that under Illinois law "mitigation of damages applies in virtually every type of case in which the recovery of a money judgment or award is authorized.") However, Interlink did not plead the affirmative defense of failure to mitigate damages in its Answer to Complaint, and that failure on Interlink's part represents a waiver of that defense. *See Stanley Gudyka Sales Co. v. Lacy Forest Products Co.*, No. 84 C 5165, 1989 WL 32892 at *2–3, 1989 U.S. Dist. LEXIS 3558 at *6–7 (N.D. Ill. April 6, 1989) (citing *A.D.E., Inc. v. Louis Joliet*

*Bank and Trust Co.,* 742 F.2d 395, 397 (7th Cir.1984)). Since Interlink did not plead this affirmative defense in its Answer or any other pleading, it is now barred from arguing that affirmative defense.

### Prejudgment Interest

Linc claims prejudgment interest under the Illinois Interest Act, which provides that:

> creditors shall be allowed to receive at the rate of five (5) per centum per annum *for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing;* . . . .

815 ILL. COMP. STAT. 205/2 (2004). *See, e.g. Krantz v. Chessick,* 282 Ill.App.3d 322, 327, 668 N.E.2d 77, 80, 217 Ill.Dec. 892 (1996) (an instrument of writing under the statute is one that sets up a creditor-debtor relationship); *See also Plasti–World Prods. v. Burgundy Prods. Mfg.,* No. 98 C 4348, 2000 WL 198909 at *1–2, 2000 U.S. Dist. LEXIS 1754 at *4–5 (N.D.Ill. February 15, 2000).

 The Act mandates prejudgment interest when a creditor seeks payment of a fixed sum on an instrument of writing. *Milligan v. Gorman,* 284 Ill.Dec. 747, 810 N.E.2d 537 (Ill.App.Ct. 1st Dist. 2004) Linc seeks to recover for breach of the lease agreement and schedules. These contracts are sufficient instruments of writing to support an award of prejudgment interest. Linc will be awarded prejudgment interest at a rate of 5% from June 3, 2003 (when the equipment should have been returned or its value paid) until the date judgment is entered.

### CONCLUSION

Judgment will enter separately granting Linc damages under the Illinois Replevin Act. Linc will recover $55,000 for the value of the unreturned equipment ($25,000), and for the Joshua Machine not returned according to contract requirements ($30,000), plus $6,039.39 rental value for the Joshua Machine, plus $5,032.79 for rental value of the other equipment. Linc will also be awarded prejudgment interest as requested.